Matter of Aimee T. v Ryan U. (2019 NY Slip Op 04791)





Matter of Aimee T. v Ryan U.


2019 NY Slip Op 04791


Decided on June 13, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 13, 2019

525802

[*1]In the Matter of AIMEE T., Appellant,
v
RYAN U., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
 —————————————————————————————————
In the Matter of RYAN U., Respondent,
v
AIMEE T., Appellant. (Proceeding No. 3.)

Calendar Date: April 30, 2019

Before: Garry, P.J., Clark, Mulvey, Devine and Pritzker, JJ.


Jehed F. Diamond, Delhi, for appellant.
Renee Albaugh, Hamden, for respondent.
Larisa Obolensky, Delhi, attorney for the child.



MEMORANDUM AND ORDER
Devine, J.
Appeal from an order of the Family Court of Delaware County (Rosa, J.), entered August 10, 2017, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Aimee T. (hereinafter the mother) and Ryan U. (hereinafter the father) are the parents of the subject child (born in 2007). Following the latest lapse in their long and tumultuous relationship, the parties consented to a March 2016 order granting them joint legal and physical custody of the child. A flurry of litigation ensued, but three matters are of direct interest here. Days after the issuance of the March 2016 order, the mother commenced proceeding No. 1 to modify the custodial arrangement. In June 2016, the father commenced proceeding No. 2 alleging that the mother had violated the terms of a temporary order granting him specific parenting time with the child. The father then commenced proceeding No. 3 in September 2016, seeking modification of the custody order to grant him sole legal and physical custody. Family [*2]Court conducted a hearing on those and other matters that included two Lincoln hearings with the child [FN1]. Thereafter, Family Court dismissed proceeding No. 1 due to the mother's failure to show a change in circumstances and proceeding No. 2 upon jurisdictional grounds. As for proceeding No. 3, Family Court found that the father had demonstrated a change in circumstances and modified the custodial arrangement to grant him sole legal and physical custody of the child, with the mother to have specific parenting time. The mother appeals.
We affirm. "A party seeking modification of a prior order of custody must demonstrate first, that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1170 [2019] [internal quotation marks and citations omitted]; see Matter of Kristen II. v Benjamin JJ., 169 AD3d 1176, 1177 [2019]). A "change in circumstances exists where the parties' relationship has so deteriorated that joint custody is no longer appropriate or possible" and, although the parents differed on the particulars of the reasons for their combative relationship, both acknowledged that they were not communicating effectively about the child by the time the father filed his modification petition in September 2016 (Matter of Timothy N. v Gwendolyn N., 92 AD3d 1155, 1156 [2012]; see Matter of Crystal F. v Ian G., 145 AD3d 1379, 1381-1382 [2016]). Family Court was therefore correct to consider what modification to the custodial arrangement would be in the best interests of the child and, inasmuch as an identical analysis would have occurred had the mother demonstrated a change in circumstances upon her modification petition, any error in the posthearing dismissal of her petition was harmless (see Matter of Jillian EE. v Kane FF., 165 AD3d 1407, 1408 [2018], lv denied 32 NY3d 912 [2019]; Matter of Tisdale v Anderson, 100 AD3d 1517, 1517 [2012]).
"In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1421 [2018]; see Matter of Kristen II. v Benjamin JJ., 169 AD3d at 1177). Further, in "determining the child's best interests, Family Court 'must . . . consider the effect of domestic violence . . . when the allegations of domestic violence are proven by a preponderance of the evidence'" (Matter of Paul CC. v Nicole DD., 151 AD3d 1235, 1236 [2017], quoting Williams v Williams, 78 AD3d 1256, 1257 [2010]; see Domestic Relations Law § 240 [1] [a]).
The father acknowledged that he was a "hot head" who had frequent disputes with the mother, and the record reveals several instances in which he behaved in an inappropriate and menacing manner toward the mother and others. Nevertheless, the father denied the mother's further allegations of physical abuse, the older of the mother's two daughters testified to the same effect, and both stated that the mother instigated many of the parties' arguments and could herself be aggressive and assaultive. Both of the mother's daughters also testified that the father cared for the child appropriately and that they did not feel unsafe around him; indeed, each has lived with him at times since his breakup with their mother. Family Court weighed this proof and found that, although the mother was afraid of a father with anger issues and "a history of being physically aggressive," her daughters' accounts of how each party behaved as a parent were entitled to more weight than testimony from the mother that "lacked candor." Contrary to the mother's contention, the foregoing establishes that Family Court adequately "took the behavior of both parties into consideration in assessing the impact of any domestic violence on the child[]" [*3](Matter of Kilmartin v Kilmartin, 44 AD3d 1099, 1102 [2007]; cf. Matter of Wissink v Wissink, 301 AD2d 36, 38-40 [2002]).
Family Court went on to observe that the parties are loving, but significantly flawed, parents. Concerns were raised about the mother's drug and alcohol use and her mental health. Even more worrisome was her penchant for making her daughters care for the child, a situation that worsened when she began dating again and often left her younger daughter alone with the child. The mother has also been unemployed for a considerable period of time and, by the conclusion of the hearing, had moved in with relatives and lacked a working automobile. The father has his own problems, most notably his temper and what Family Court characterized as an "overbearing, controlling and disrespectful" manner. That said, the father provides appropriate care for the child and is sober following a history of alcohol abuse. He holds a steady local job, maintains a suitable residence, and stated that the child could be cared for by his relatives or the mother's older daughter while he was working. The father further indicated that, unlike the mother, he would do what was necessary to keep the child in a school where he was doing well. The foregoing constitutes a sound and substantial basis for Family Court's conclusion "that the father was the more fit parent and that his past flaws were outweighed by his more recent positive lifestyle and willingness to provide a suitable home for his child" and, thus, we will not disturb its determination (Matter of Perry v Surplus, 112 AD3d 1077, 1080 [2013]; see Matter of Lawton v Lawton, 136 AD3d 1168, 1169-1170 [2016]; Matter of Kilmartin v Kilmartin, 44 AD3d at 1102-1103). The mother's remaining contentions are unpersuasive.
Garry, P.J., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The other matters were two petitions, filed by the mother, alleging that the father had committed a family offense in March 2016 and violated the ensuing temporary order of protection in April 2016. The result was a separate order in which Family Court found that the father had committed family offenses and violated the temporary order of protection, granted an order of protection in the mother's favor and fined the father. No appeal was taken from that order.